Good morning, your honor. May it please the court. My name is Alex Flake. I represent the plaintiff appellants in this matter. I'd like to reserve two to three minutes at the end of oral argument for rebuttal if that's okay. Do you want two or do you want three? I would prefer two, your honor. That's fine. Thank you. I'd like to start off by first saying what this case is not about. This case is not about whether the attorney general has authority to promulgate this or any other regulation. This case is not about whether the load indicator alternative design requirement for pistols sold or transferred to Massachusetts consumers applies to generation three or generation four Glock pistols. It certainly does. This case is not about whether there is a substantial relationship between the load indicator alternative design requirement and any purported important government objective such as consumer protection or consumer safety. And to some extent, it's not even really about whether generation three and generation four Glock pistols comply with the regulation, although controversy over the compliance of their load indicators is the genesis of this matter. Now what this is, the dealer manufacturers want to comply with the regulation, but Areta Laws has had to do it. And the reason for that is because the regulation itself is unconstitutionally vague and the attorney general who promulgated this regulation provides no feedback or information as to what does comply. Is there an allegation that there's a specific request? In other words, there's a specific application that your client is wondering whether it fits the regulation or not, and you made a request and you've been given no response. That's correct, Your Honor. Which one is that? Which application is that you've asked for and got no response? The attorney general has banned the sale of third and fourth generation Glock pistols. And the justification for that is that these pistols lack what the or, in some cases, effective load indicators. So this requirement, the load indicator requirement, is an alternative design requirement for any pistol sold in Massachusetts. The dealer manufacturers in this case have looked and examined generation three and generation four Glock pistols and find that their load indicator implementations are essentially no different from many other pistols that are merchantable in Massachusetts. That wasn't my question. Did your client had a proposed, wanted to do the pistol a certain way? I'm sorry, Your Honor, I couldn't hear you. Presumably your client wanted to do the pistol in a certain way and you tell us your client wanted to comply with the statute. Correct. And so I guess you're raising the possibility that they didn't know if the way it wanted to do it was going to comply with the statute or not. Ultimately, that is absolutely correct, Your Honor. Did it go and ask the attorney general and say, here's what we're going to do, does that comply with the statute? No, Your Honor. So you're not even asking then, how can you say they refused to tell you whether you comply with the statute or not if you didn't ask? The question that was posed to the attorney general's office was, do generation three and generation four Glock pistols comply with the regulation? The response was, they do not comply because they lack effective load indicators. The response states absolutely nothing about what about those load indicators is actually non-compliant. But isn't the answer to that the regulation says, as I recall, that there must be a plain indication by means of the load indicator as to whether there is a cartridge in the chamber. What is ambiguous or vague about the requirement of a plain indication? Thank you, Your Honor. I would posit that there are four words within the definition of load indicator which happens to also be its compliance standard. And those four words are device which plainly indicates. Now, I'll break those down because this is really the crux of the case. The question is, what is a device? There is a load indicator on the third and fourth generation. That's correct. So obviously it's not that it's not there. The answer has to be that it's not plainly indicated. And if you look around at some of the other guns that do more plainly indicate it, I don't see how this is hard to determine. Your Honor, you're absolutely correct. And that's actually, you hit the nail on the head. And that is because Glock load indicators are virtually identical to those of several other models of pistols freely sold in Massachusetts and are considered at least implicitly compliant with the regulation by the Attorney General. So then it sounds like the operative word there is virtually. And without getting into any kind of patent issues, that seems to be where you should focus. I'm not so sure, Your Honor. And the reason why I say virtually identical is because when you look at these things, these are not complicated things. What I mean is the Glock load indicators are actually very simple devices, much like several other pistols in Massachusetts. However, the Attorney General has briefed and has actually had an oral argument in the district court indicated that the fact that those other load indicators, that she has not brought enforcement actions against those other pistol models, does not mean that they're in compliance. So we're in a very difficult situation. On the one hand, we've got load indicators that are virtually identical to pistols that the Attorney General has tacitly approved. But the Attorney General says that, I don't know if you say tacitly approved. The Attorney General has not brought an enforcement action based on a claim of noncompliance. It seems to me that those cases are in neutral. If the Attorney General took the position, they're fine, but yours isn't, you would have an argument as to what does the Attorney General possibly mean by plainly indicate. That's not what the AG is saying. The AG is, it seems to me, is leaving the other cases in neutral. You're not bringing an equal protection claim. The AG is saying it isn't plain enough. And I would suppose that people who design pistols can look at them and say, well, what could we do to make it plainer? Maybe we could use color. Maybe we could make something stick out from the side a little bit more than it does. But I don't see how that translates into vagueness. Your Honor, not affirmatively indicating that the other implementations of load indicator that are virtually identical to that of Glock are okay. The Attorney General has reserved for herself the statement that they may not be merchantable in Massachusetts. So what we have here is exactly an equal protection argument. Why are these not okay where the should, and this is a reinforcement action. There is ample Supreme Court authority indicating that this case is actually right because what otherwise should the dealer manufacturers do? Should they risk an enforcement action? Don't dealer manufacturers design pistols? And isn't it a function of those who design pistols to consider how they could be designed so that they would plainly indicate the presence of the cartridge? Absolutely, Your Honor. Why then is there a vagueness argument? Employ your people to come up with something. Your Honor, that something is the issue. The Williams test, the U.S. v. Williams test, which specifically addresses this vagueness issue, discusses the elements of how the Supreme Court's definition of vagueness comes up. And it says, holy subjective judgments without statutory definitions or definition narrowing context for subtle meanings are vague. Now in this case, the question Is there something vague about the word indicate? There is, Your Honor. Does it indicate visually or does it indicate tactically? Well, are you saying in effect that the only way the Attorney General can enforce this or reach the objective of this regulation is to come up in effect with her own blueprint about how the gun should be designed? Certainly not, Your Honor. What I'm saying is that there should be some indicate. There should be sufficient specificity in the statute or rather the regulation to provide manufacturers and dealers enough information to actually know what may or may not comply. The issue here is Well, give me an example of something that is something less than a visual blueprint and something more than the words plainly indicate, which would be an example of what you think the Attorney General should come up with. In the plaintiff appellant's reply to Amicus Brady Center to Prevent Gun Violence in the United States, I actually put side by side the regulation that the Amicus and who supports the Attorney General's proposition says is an equivalent regulation in California. And when you put them side by side, I actually highlighted the specific language. The California language is indeed What was the language? I haven't got it in front of me. I can point you to the page in the appendix, Your Honor. Well, you don't have to give it verbatim. Tell me roughly what you think It says a device which plainly indicates that a cartridge is within the firing chamber of the handgun. And then it goes on to say to comply with this regulation, you have to have lettering of so and so size. It has to be on a certain place on the pistol. It has to be plain to an adult user. So it's really narrowing down, first of all, the audience of the indication. And it's also indicating how that indication is to be done. When we're talking about plainly When you get to the how the indication is to be done, you're getting, in effect, to a specification of the details of the design of the pistol. And your argument seems to be that without a specification of the details of the design, a requirement of plain indication is vague. That's correct, Your Honor. But I think you're taking it a step too far. And that is asking for specificity. We're not asking for specificity. We're asking for guidance. I'll give you another example of what the Attorney General has used as an example of vagueness that has been upheld. And I'll contrast that very easily. And that is, in New York, there was a regulation regarding firearms that were, by New York statute, called assault weapons. And the issue was whether a particular firearm had a prominent pistol grip underneath it. And so the challenge in New York was that the prominent pistol grip is too vague. Well, let's contrast that with this case. First of all, we know what we're referring to. We're referring to a pistol grip. The shape and the size of that pistol grip is something that a human hand can grasp. The New York statute says that pistol grip has to be below the action. It's not to the side. It's not on top. It's not in front. It's not fore or aft of the action. We know where it's supposed to be. We know that it has to protrude prominently. Prominently has a minimum dimension in that case because it is a pistol grip, after all, and it has to be grippable by a human hand. In this case, we have a device, a thing. The Attorney General has not enforced the regulation against many different implementations that I would argue are far less effective than that of Glock. For example, a small hole drilled into the base of a firing chamber. In a situation like that, perhaps you can see that there's a cartridge there. Perhaps you can't. It depends on the lighting conditions. It depends on the angle of view, how far you're looking at it. The Attorney General has not objected to a protrusion at the rear, at the breech of the slide. The reality is- I think, if I may interrupt, I think you are making a selective enforcement argument rather than an argument that, in effect, goes to the language control. Your Honor, it is selective enforcement, and it is equal- But that's not the case you brought. But I think that these things are really byproducts of the inherent vagueness in the regulation. Again, the words device, which plainly indicate, certainly are not by themselves vague, but settled legal meanings. There are none within the Massachusetts General Laws. There are none within the Code of Massachusetts Regulation. In terms of context, context is everything here, because when we say plainly, are we saying from an extended hand? Are we saying looking down? Where does this thing have to be? Perhaps the Attorney General can say it can be here, it can be there, it has to be minimally this size, it has to be minimally this contrast between this part and that part. There has to be some range. At this point, we have nothing. Anything complies. In fact, one of the ideas that I brought up- Mr. Flick, you're over your time. Your Honor, if I may just finish the thought. You're eating into your rebuttal time. Okay, I'll come back to it. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Assistant Attorney General Julie Kobik for Attorney General Maura Healey. When the Attorney General promulgated the Load Indicator Regulation, she sought first and foremost to save lives and prevent injuries caused by the accidental discharge of firearms, but she also wanted to provide manufacturers with reasonable flexibility in determining how to satisfy the Load Indicator Regulation. So she settled on a definition that makes it plain that a load indicator must be a device that makes it obvious to the user when a cartridge is in the chamber. That much is clear from the plain text of the regulation and also from the purpose of the regulation. I'm sorry, Ms. Kobik, could you bring that mic a little closer to your mouth? Sure, Your Honor. As applied to Glock handguns, the regulation is not vague. There is no device on a Glock handgun that makes it obvious to a user when a cartridge is in the chamber. The extractor device is barely noticeable and would not make it plain when the gun is loaded, and that's important because the AG's purpose in promulgating this regulation was actually to save lives by preventing the accidental discharge of firearms. Now Mr. Flake contends that the regulation is not specific enough, but this Court has upheld numerous statutes and regulations that require some interpretation, and the Court has recognized that just because a statute or regulation requires interpretation doesn't render it unconstitutionally vague. In fact, nearly all statutes and regulations require some interpretation, and reasonable breadth is acceptable. So to give just a few examples, in the URI Student Senate case, this Court upheld the phrases substantial disturbance, public nuisance, and a significant segment of the neighborhood, all phrases that require interpretation. Similarly, in the United States v. Lockman case, the Court upheld the phrase specially designed. And in providing a definition device which plainly indicates that the Attorney General gave manufacturers flexibility in determining how to meet that standard. So not all guns are manufactured the same way. Many guns use different forms of load indicators, and if the Attorney General were to require a blueprint, as Justice Souter says, that might mean that many guns that are currently available for sale in Massachusetts could not meet the standard because of the way that they're manufactured. Is there a procedure for finding out whether a particular proposed application is satisfactory or not? The dealer plaintiffs in this case took advantage of a procedure, which is they wrote a letter to the Attorney General and asked, do Glock pistols satisfy the regulation? And the Attorney General responded with a letter within a short amount of time and said, no, Glock pistols don't satisfy the regulation. And the Attorney General endeavors to respond to all reasonable requests by consumers asking whether certain handguns satisfy the regulations. That procedure is authorized by state law, General Law Chapter 30A, Section 8. And in general, the Attorney General's office tries to respond to reasonable consumer inquiries, as she did in this case. And that brings me to my second point, Your Honors, which is the regulation is not vague as applied to Glock handguns, also because the dealers had actual knowledge that Glock handguns don't comply with the regulation. That makes this case indistinguishable from the Zhenju Wu case, in which this Court held that when the defendants actually believed that their conduct violated the State Department regulation, that they could not assert an as-applied vagueness challenge. In the same way, the Attorney General has informed the dealers in this case that their proposed conduct, which is selling Glocks, would not comply with the regulation. And therefore, there is no vagueness about how they can conform their conduct to the law. Ms. Colbert, just a question about procedure. Is it standard procedure or is it rare for the Attorney General to get this kind of inquiry from manufacturers? The questioning of counsel led us to come to understand that there's a category of guns in repose somehow, that no one knows if they're in compliance or not, but they're being sold in Massachusetts. Two answers to your question, Your Honor. So first, there's a certification process that the Attorney General uses with gun manufacturers. So under the regulations 940CMR 16.043, manufacturers certify to the Attorney General that their firearms comply with a number of standards required by the regulations, so the performance requirements like the drop firing and a number of the other performance requirements. As part of that process, manufacturers will also say our gun has a load indicator and here it is. And the Attorney General's office reviews that certification and often will agree with the manufacturer and then the gun is available for sale. So all of that happens in every instance before a gun is sold in the state? I believe that happens before guns are sold in the state. We don't make those certifications publicly available, but because the manufacturers have to go through the certification process on other requirements, the Attorney General's office does process certifications. So then the assumption should be that if a gun is for sale, then the Attorney General has certified it that it is capable of being sold here? So it's not the Attorney General that does the certification. The Attorney General receives certifications from gun manufacturers. And then she may object, which is actually what happened in this case. This is outside the record, but Glock attempted to say that there is a load indicator on their Generation 3 and 4 pistols. The Attorney General disagreed and then because there was some disagreement on that, the Attorney General published a letter to all dealers that the Glock did not comply with the regulation. Separately, any interested party, like the dealers in this case, can write a letter to the Attorney General's office and ask, does this pistol comply with the regulation? And as the Attorney General did here, she'd respond and say, yes, this satisfies the load indicator regulation or no, it does not. I'm still confused on the first procedure. Should we assume that if a particular gun is sold here, that it has passed muster by the Attorney General? No, I don't think you should make that assumption. Part of the certification process, well, there are different models of pistols that come out over time. And I don't know if the Attorney General would receive a certification process as new models come out. So it could be that a new model will come out. The Attorney General wouldn't receive a certification from the manufacturer and perhaps the load indicator, the device that's claimed to be a load indicator, has been changed. So the dealer can go ahead and take his chances and sell that gun. And if the Attorney General subsequently finds out about it and says this doesn't pass muster, an enforcement action can be brought. That's right. But that's the chance that the DEA would take. That's right. That's right. And by not objecting to specific models, the Attorney General doesn't signify that they can be sold in Massachusetts. If a model is sold, as Justice Souter says, the dealer is taking the chance that it might not comply with the regulation. But I don't think that's a very large risk because, again, this definition provides fair notice to persons of ordinary intelligence and certainly to sophisticated business owners like gun dealers of what's required to satisfy the regulation. The device that is purported to be a load indicator has to make it plain that there's a bullet in the chamber and that's because the Attorney General wants users to know when the gun is loaded. So is the enforcement action a cease and desist or is it also a recall? It would be a lawsuit under Chapter 93A. And so the Attorney General, as part of that procedure, the Attorney General is required by law to send a letter to a dealer informing them that they might be violating Chapter 93A by selling a certain pistol. At that point, the dealer can determine that they're not going to sell the pistol anymore and it can be resolved before the case would actually go to court. But is it a recall of those that are already sold? I don't believe so. I'm not aware of any recalls that have ever been announced. Just on the discriminatory enforcement element of the analysis, Mr. Flick has conceded here that this is a pre-enforcement action and that makes sense because the only pronouncement that the Attorney General has made about which firearms have load indicators and which do not is the Glock pistols here. So there's no other point of comparison. The Attorney General is arbitrarily enforcing this regulation against Glocks and, you know, treating similarly situated firearms differently. She hasn't made any announcement about any other firearms. And so because this is a pre-enforcement action, this court shouldn't even reach the question. But secondly, on the merits, there's just no allegation of arbitrary enforcement at all here. There's no Chapter 93A actions that Mr. Flick alleges have been brought. On the facial vagueness claim, because First Amendment rights aren't implicated here, the plaintiffs can't bring a facial challenge to the vagueness of the regulation. And even if they could, this statute has a plainly legitimate, excuse me, the regulation has a plainly legitimate sweep. I'll touch briefly on the Second Amendment claim. To the extent that the plaintiffs continue to press that claim, and I should say it appears that they've abandoned the claim, but to the extent that they continue to press that claim, it fails for a number of reasons. The regulation is presumptively lawful because it's a qualification on the commercial sale of arms and also because it imposes a de minimis burden. The consumer plaintiffs were free to buy any number of firearms that they could use in defense of their homes. They can see that the regulation doesn't apply to revolvers, to single-shot pistols, to rifles, excuse me, and shotguns, and that a number of semi-automatic pistols also satisfy the regulation. And even if this has a substantial relationship to the Attorney General's objective of deterring accidental firearms discharges. Thank you. If this Court has no further questions, thank you. Thank you, Your Honor. A couple of points. One is a violation of the regulation is per its own terms a violation of Chapter 93A. Per Massachusetts law from the Supreme Judicial Court, a violation of Chapter 93A is essentially a punitive statute, which brings it much closer to criminal culpability as I've written in the reply brief. So the standard, at least in this case, where a constitutional right, a fundamental constitutional right is being burdened, and there's no question it is being burdened because the consumers in this case cannot purchase firearms in common use. Glock pistols arguably are by far the most popular pistols in the United States. So the constitutional standard in evaluating this regulation should be stricter than for what are purely civil regulations, as the Attorney General has mentioned. With respect to the flexibility in the regulation, the question here is who decides? The regulation and the authority, abundant authority, that I've brought within the briefs is that it is the dealers themselves, the dealer manufacturers themselves, who are subject to the regulation that are supposed to be able to rely on this and have some sense of consistency and verifiable knowledge, some constitutionally tolerable level of confidence that what they do is not going to subject them to sanction. In this case, they don't, because the very flexibility that the Attorney General speaks about is out to such a distant extent that it also provides opportunity for indiscriminate, arbitrary, and capricious enforcement. Thank you, Counselor. Thank you.